UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GEORGE BRAVO,

Petitioner,

v.

M.D. BITER, Warden,

Respondent.

Case No.  2:16-cv-04150-JLS-KES

FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This Final Report and Recommendation is submitted to the Honorable Josephine L. Staton, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Courts for the Central District of California.

## I.

## PROCEEDINGS

On January 1, 2017, Respondent moved to dismiss Petitioner's First Amended Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 (Dkt. 8 or "FAP") as time-barred and, alternatively, unexhausted.  (Dkt. 25.)

Petitioner opposed the motion (Dkt. 37) and Respondent filed a reply (Dkt.

1

43).

In November 2017, the undersigned issued a Report and Recommendation recommending that the FAP be dismissed as untimely.  (Dkt. 45.)  In January 2018, Petitioner filed objections to the Report and Recommendation.  (Dkt. 48 or "Objections".)  The Court now issues this Final Report and Recommendation to address Petitioner's Objections.  (See notes 2, 3, and 5 below.)

For the reasons discussed below, the Court recommends GRANTING Respondent's motion and DISMISSING the FAP as untimely.

## II.

## PROCEDURAL HISTORY

### A. Conviction and Appeal.

In 2013, Petition was convicted of two counts of gang-related conspiracy to commit murder.  (Dkt. 8 at 2.)  Per the evidence presented at trial summarized by the California Court of Appeal, the Los Angeles County Sheriff's Department obtained a series of wiretaps to investigate suspected members of the Mexican Mafia.  (Lodged Document ["LD"] 7, Dkt. 26-17 at 2); People v. Bravo, 2014 Cal. App. Unpub. LEXIS 7203 (Oct. 8, 2014).  Detectives listened to approximately 12,000 telephone calls, including calls in which Petitioner communicated with others about plans to murder two rival gang members in retaliation for a kidnapping.  Id.

On direct appeal, Petitioner argued that the evidence was insufficient to support his convictions because the content of the recorded calls was ambiguous, and that the sealing of facts supporting the wiretaps violated his constitutional rights.  Id.  The Court of Appeal affirmed his convictions.  Id.

On December 17, 2014, the California Supreme Court denied his petition for review.  (LD 9, Dkt. 26-19); People v. Bravo, 2014 Cal. LEXIS 11338, at *1 (Dec. 17, 2014).  Petitioner's appellate attorney sent Petitioner a letter dated December 24, 2014, informing him that Petitioner could file a federal petition for writ of

habeas corpus within one year and 90 days of the California Supreme Court's denial.  (See FAP at 35.)

## B. State Habeas Proceedings.

About ten months later on October 22, 2015, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, which he signed on October 15, 2015, and submitted to the prison mailroom on October 19, 2015.  (LD 10, Dkt. 26-20 at 1, 6; LD 14 [Hancock Decl. explaining that mail log entries are made "at or near the time the inmate submits the legal mail for delivery"], Dkt. 26-24 at 1, 3 [mail log[1]].)  The California Court of Appeal summarily denied the petition on October 28, 2015.  (LD 11, Dkt. 26-21.)

About nine months later on July 18, 2016, Petitioner filed a habeas corpus petition in the California Supreme Court, which he signed on July 11, 2016 and submitted to the prison mailroom on July 13, 2016.  (LD 12, Dkt. 26-22 at 11 [signature date]; LD 13, Dkt. 26-23 [filing date]; LD 14, Dkt. 26-24 at 3 [mail log].)

On September 14, 2016, the California Supreme Court denied the petition, citing People v. Duvall, 9 Cal. 4th 464, 474 (1995), and In re Swain, 34 Cal. 2d 300, 304 (1949).  (LD 13, Dkt. 26-23 at 1.)

## C. Federal Habeas Proceedings.

On May 9, 2016, Petitioner mailed a one-page letter to the Court explaining that he had "recently exhausted [his] state appeal and [was] working on [his] federal."  (Case no. 2:16-cv-03315-JLS-KES, Dkt. 1 [postmark date].)  He explained that he had "recently found out about the time restraints" and wondered "if there is any way that [he] may be granted an extension of time …."  (Id.)  Because Petitioner had not yet filed a federal habeas petition, the Court dismissed

---

[1] The mail log also shows that Petitioner mailed something to the California Court of Appeal on October 5, 2015, and received a response on October 15, 2015. Whatever this was, the Court of Appeal's online records do not list it under Petitioner's name.

3

the matter for lack of any case or controversy.  (Id., Dkt. 3.)  The Court explained that federal habeas petitions are generally subject to a one-year filing deadline, but that deadline may be extended by statutory or equitable tolling.  (Id.)

Petitioner next filed a habeas corpus petition under § 2241 in this Court on June 10, 2016.  (Dkt. 1 at 1.)  He did not provide a signature date, but the petition was submitted to the prison mailroom and postmarked on June 7, 2016.  (Dkt. 1-3 at 31; LD 14, Dkt. 26-24 at 3.)  The Court dismissed the petition with leave to amend because it should have been filed under § 2254 and it suffered from other deficiencies. (Dkt. 4.)  Petitioner filed his FAP on July 18, 2016.  (Dkt. 8 at 1.)  It was signed on July 11, 2016, and delivered to the prison mail room on July 13, 2016.  (Id. at 8; LD 14, Dkt. 26-24 at 3.)

Upon receiving the FAP, the Court issued an order to show cause ("OSC") why it should not be dismissed as unexhausted.  (Dkt. 10.)  The Court noted that Petitioner appeared to have an exhaustion petition pending with the California Supreme Court, but it was unclear if the claims in the FAP were included in that petition.  (Id. at 3.)  The Court instructed Petitioner to respond to the OSC by either explaining why his claims were exhausted or moving for a stay.  (Id. at 3-4.)

On August 18, 2016, Petitioner moved for a stay under Rhines v. Weber, 544 U.S. 269 (2005).  (Dkt. 11.)  Because his cursory briefing did not address the "good cause" standard, the Court invited him to submit supplemental briefing.  (Dkt. 12.) Petitioner filed supplemental briefing on September 19, 2016.  (Dkt. 15.)  Petitioner asserted that he had "recently obtained evidence" to support his unexhausted ineffective assistance of counsel ("IAC") claim, i.e., a one-page declaration that his trial counsel, Omar Bakari, filed in the Los Angeles Superior Court on September 28, 2012.  (Id. at 5.)  Mr. Bakari declared that he sought to introduce "numerous recorded telephone calls" at trial, but his preparation to introduce the calls was inadequate.  (Id.)  Petitioner did not explain when he received the declaration, but stated that he had discovered it "recently" when "the California Appellate Project

4

sent some legal paperwork."[2]  (Id. at 2.)  He did not present any "good cause" arguments for failing to exhaust any other claims earlier.

After receiving this motion and prior to receiving any opposition, the Court learned from online records that the California Supreme Court denied Petitioner's petition on September 14, 2016.  (LD 13.)  On September 21, 2016, the Court denied Petitioner's motion for a Rhines stay without prejudice to its reconsideration or renewal if needed to establish the timeliness of any claims.  (Dkt. 17.)  The Court directed Respondent to respond to the FAP.  (Dkt. 16.)

Respondent filed the instant motion to dismiss.  (Dkt. 25.)  Respondent argues that (1) the FAP is time-barred under the one-year limitations period set forth in 28 U.S.C. § 2244(d), and (2) alternatively, all of Petitioner's claims remain unexhausted, because a denial citing Swain and Duval does not constitute exhaustion.  (Id. at 2.)

---

[2] Mr. Bakari's declaration was part of the clerk's transcript ("CT") from Petitioner's trial.  (See Dkt. 26-5 at 92; 5 CT 1088.)  Petitioner moved pro per for a new trial before he was sentenced.  (Id. at 116, 131; 5 CT 1112, 1127.)  In his motion, he claimed IAC because "counsel was assigned this case over four years ago yet he was typing up transcripts of telephonic conversations while the government was presenting their case and the day before he was intending to present this evidence to the jury."  (Id. at 119; 5 CT 1115.)  The transcripts contained inaccuracies and bold type.  (Id.)  Thus, Petitioner's motion for a new trial references the same lack of adequate preparation described in Mr. Bakari's declaration.  In February 2013, Petitioner wrote a complaint to the state bar expressly referencing Mr. Bakari's "self-declared ineffective assistance."  (Dkt. 1-1 at 10; Dkt. 1-3 at 3.)  Petitioner, therefore, cannot show that he only recently discovered Mr. Bakari's declaration.

In his Objections, Petitioner claims for the first time that shortly before trial, Mr. Bakari told Petitioner that he could not find the telephone transcripts he was "supposed to" use and "changed his defense at the last minute."  Petitioner claims that the omitted transcripts could prove his innocence.  (Objections at 2.)  Petitioner attaches various pages of apparent telephone transcripts, none of which suggest his innocence.  (See id. at 13-29.)  Based on his own allegations, Petitioner knew of these alleged transcripts at the time of trial.

## III.

## DISCUSSION.

**A. The AEDPA Statute of Limitations.**

The Petition was filed after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241, et seq. The AEDPA imposes a one-year limitations period for state prisoners to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). That section provides in pertinent part:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]

28 U.S.C. § 2244(d)(1)(A).

Here, the California Supreme Court denied Petitioner's petition for review on December 17, 2014, and there is no indication that Petitioner filed a petition for writ of certiorari in the United States Supreme Court. (LD 8.) Consequently, his conviction became final ninety days later, on March 14, 2015. See Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999). Therefore, the last date for Petitioner to file his federal petition was March 14, 2016, absent sufficient statutory or equitable tolling.[3]

---

[3] There is also an equitable exception to the ADEPA's statute of limitations for prisoners who present new, reliable evidence of actual innocence. Lee v. Lampert, 653 F.3d 929, 932 (9th Cir. 2011) (citing Schlup v. Delo, 513 U.S. 298 (1995)). Specifically, a petitioner must show "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Lee, 653 F.3d at 938 (quoting Schlup, 513 U.S. at 327). Petitioner does not set forth any new evidence or legal arguments attempting to satisfy this exception, either in the FAP or in his Objections.

### 1. Statutory Tolling.

The AEDPA's statute of limitations is "statutorily tolled" while a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending…." 28 U.S.C. § 2244(d)(2). Because Petitioner's habeas petition in the California Court of Appeal was filed before March 14, 2016, and it was denied without citation to any authority indicating it was not properly filed, Petitioner is entitled to statutory tolling for the days when it was pending.

Petitioner argues that he should receive tolling for this petition starting on October 15, 2015, i.e., the date when he signed it, not October 19, 2015, i.e., the date when it was mailed per his prison mail log. (Dkt. 37 at 8.) Under the prison mailbox rule, a prisoner's pro se habeas petition is "deemed filed when he hands it over to prison authorities for mailing to the relevant court." Campbell v. Henry, 614 F.3d 1056, 1058-1059 (9th Cir. 2010) (citation omitted). The prisoner is *presumed* to have handed his petition to prison authorities on the day it is signed. Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010) ("When a prisoner gives prison authorities a habeas petition or other pleading to mail to court, the court deems the petition constructively 'filed' on the date it is signed."). Legal presumptions, however, can be rebutted by contrary evidence. Lewis v. Mitchell, 173 F. Supp. 2d 1057, 1059 n. 1 (C.D. Cal. 2001) (stating that delivery for purposes of constructive filing under prison mailbox rule is presumed to be on date of signing petition "absent evidence to the contrary"). For example, a later-dated proof of service declaration would be contrary evidence. Bosley v. Valasco, 2016 U.S. Dist. LEXIS 56842 at *11 (E.D. Cal. Apr. 27, 2016) ("[A] document is deemed served or filed on the date a prisoner signs the document (or signs the proof of service, if later) and gives it to prison officials for mailing."). A later-dated note to the clerk in the same envelope would also be evidence that the petitioner still had the materials in his possession as of the date of the note. See Knox v. Soto, 2016

U.S. Dist. LEXIS 88983, at *6 (C.D. Cal. May 6, 2016).

Respondent urges the Court to consider the date the petition was logged on the prison's mail log as its constructive filing date. Cases discussing the prison mailbox rule acknowledge that mail logs generally reliably establish when materials were given to staff for mailing. Houston v. Lack, 487 U.S. 266, 275 (1988) ("Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the pro se prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one.").

Here, Respondent provided a declaration that staff members log prisoner mail "at or near the time the inmate submits the legal mail for delivery." (LD 14, Dkt. 26-24 at 1.) It is unclear whether "near the time" means within an hour or two or within a day or two. Ultimately, whether Petitioner receives 10 or 14 days of statutory tolling for his October 2015 state petition does not change the statute of limitations analysis, so the Court will give Petitioner the benefit of the four additional days. With that, Petitioner's state habeas filings are summarized in the chart below:

| | Constructive Filing Date | Denial Date | Pending Days | Gap Days |
|---|---|---|---|---|
| Appellate | 10/15/15 | 10/28/15 | 14 | n/a |
| Supreme | 07/13/16 | 09/14/16 | 64 | 258 |

Applications for state post-conviction relief filed in an upward progression may be deemed "pending" under § 2244(d)(2) "even during the intervals between the denial of a petition by one court and the filing of a new petition at the next level, if there is not undue delay." Biggs v. Duncan, 339 F.3d 1045, 1046 (9th Cir. 2003). Such tolling between state habeas petitions is commonly referred to as "interval" or "gap" tolling. While "undue delay" has not been precisely defined, federal courts within the Ninth Circuit frequently deny § 2244(d)(2) gap tolling when there are unexplained and/or inadequately explained intervals between state post-conviction

8

filings that exceed 60 days. See, e.g., Velasquez v. Kirkland, 639 F.3d 964, 968 (9th Cir. 2011) (inadequately justified 80-day and 91-day delays between state habeas filings were held to be unreasonable and untimely under California law and to preclude interval tolling for those time gaps). As a result, Petitioner is not entitled to statutory tolling for the 258-day gap between his two state filings.

Petitioner is also not entitled to statutory tolling for the pendency of his California Supreme Court habeas petition. It was filed after his AEDPA statute of limitations expired on March 28, 2016 (i.e., March 14, 2016, plus 14 days). Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003), cert. denied, 540 U.S. 924 (2003) (holding that statutory tolling "does not permit the reinitiation of [AEDPA's] limitations period that has ended before the state petition was filed").

Thus, the last day for Petitioner to file his federal petition was March 28, 2016. Whether compared to the June 2016 filing date of the original petition or the July 2016 filing date of the FAP, Petitioner's federal filing was untimely absent equitable tolling.[4]

### 2. Equitable Tolling.

The AEDPA statute of limitations is subject to equitable tolling in appropriate cases. Holland v. Florida, 560 U.S. 631, 645 (2010). To qualify, a petitioner must demonstrate: (1) that he has been pursuing his rights diligently, and (2) that some "extraordinary circumstance" stood in his way that prevented him from timely filing. Id. at 649 (citing Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). The "extraordinary circumstance" requirement "suggests that an external force must cause the untimeliness, rather than … merely oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application

---

[4] The Court need not address whether the FAP relates back to the original Petition if the original Petition was untimely. Similarly, the Court need not determine whether Petitioner qualifies for a Rhines stay if the original Petition was untimely.

of equitable tolling." Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir. 2008)). The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances made it impossible to file a petition on time. Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009). A litigant bears a heavy burden to establish that equitable tolling applies, because "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (citation omitted).

Petitioner argues that he is entitled to equitable tolling from March 14, 2015 to October 15, 2015, and from October 28, 2015 to June 10, 2016, for a variety of reasons, each of which is addressed below. (Dkt. 37 at 9, 12.)

        a.      Inadequate Law Library Access.

Petitioner argues that due to his gang-related convictions, when he entered prison in 2013, his prison security classification subjected him to lockdowns for "a large percentage" of his time. (Dkt. 37 at 1-2.) He was "lucky to get 4 hours every two weeks" at the law library. (Id. at 2.)

From March 14, 2015 through the present, he has been housed at Kern Valley State Prison. (Id. at 18, ¶ 1.) He had no access to the law library at Kern for the first year, i.e., until March 15, 2016, because the library is small and "priority is given to …inmates with verified deadlines." (Id. at 2 and 24 [law librarian confirmation that Petitioner first used law library in March 2016].) When the Court of Appeal denied his habeas petition in October 2015, Petitioner did not seek priority by telling staff that he needed to file an exhaustion petition promptly with the California Supreme Court, because "Petitioner was not aware that he must file a writ of habeas corpus in the California Supreme Court until another inmate told him." (Id. at 6.)

Petitioner contends that when he changed from a GLU [general legal user] to

a PLU [priority legal user] inmate, he received one law library session on March 15, 2016.  (Id. at 3.)  Petitioner does not explain why he changed from a GLU to a PLU at that time or what legal matter(s) he worked on in March 2016.  The March session was followed by three law library sessions in the first half of July 2016.  (Id.)  "Thereafter, due to court-ordered deadlines he was able to attend regularly."  (Id.)

Petitioner lacked access to the law library between October 2015 and March 2016 because he did not know to request priority to complete his California Supreme Court exhaustion petition.  (Id. at 6.)  This is not an extraordinary circumstance beyond Petitioner's control.  See Ramirez, 571 F.3d at 998 (holding "ordinary prison limitations" on access to law library and copier are not extraordinary and did not make it impossible for petitioner to file timely petition); Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001) (recognizing that lack of access to library materials does not automatically entitle petitioner to equitable tolling); United States v. Van Poyck, 980 F. Supp. 1108, 1111 (C.D. Cal. 1997) (holding that several security lockdowns and lack of access to prison's purportedly small law library for unspecified number of days are not extraordinary circumstances).

While Petitioner broadly states that he "repeatedly requested access to the law library but was denied each time" (Dkt. 37 at 19, ¶ 10), he has failed to provide the specific dates that he applied, reasons for the alleged denials, or copies of his written requests to demonstrate that he made a diligent effort to obtain library access.  Again, based on Petitioner's admissions that he did not know he needed to file an exhaustion petition in the California Supreme Court without unreasonable delay (id. at 6) and his claim that he did not know his AEDPA filing deadline (case no. 2:16-cv-03315-JLS-KES), it is clear that his failure to advise prison staff of his filing deadline(s) caused him not to receive law library priority.

Moreover, Petitioner admits that he received law library access on March 15,

11

2016.  This was prior to the expiration of his AEDPA deadline on March 28, 2016. Petitioner should have been aware of his AEDPA deadline, or at least that time was of the essence, given his appellate attorney's December 2014 letter.  Thus, on March 15, 2016, he could and should have prepared and timely filed his federal petition along with a stay motion.  Thus, the cause of Petitioner's tardiness was his lack of diligence, not his lack of access to the law library.

          b.     Lack of Education.

Petitioner contends that he is "semi-illiterate" because he dropped out of school in middle school.  (Dkt. 37 at 3.)  He is also "computer illiterate," and the law library's research materials are computerized.  (Id. at 4.)  At the same time, however, Petitioner took classes towards his General Educational Development ("GED") in 2015 and 2016.  (Id. at 3.)  "Petitioner taught himself to read and write better and after years of study and work, Petitioner received his GED in February 2017."  (Id.)

It is well settled that a lack of legal training or education does not present a rare and exceptional circumstance justifying equitable tolling.  See Ford v. Pliler, 590 F.3d 782, 789 (9th Cir. 2009) (observing that equitable tolling "standard has never been satisfied by a petitioner's confusion or ignorance of the law alone"); Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) ("a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling"); Payne v. Valenzuela, 2016 WL 304294, at *1 (C.D. Cal. Jan. 25, 2016) ("petitioner's lack of legal sophistication and limited ability to read and write" are not extraordinary circumstances for equitable tolling).

          c.     Mental Impairments.

In Bills v. Clark, 628 F.3d 1092 (9th Cir. 2010), the Ninth Circuit held that proof of a severe mental impairment can qualify for equitable tolling where the petitioner meets the following two-part test:

(1) *First*, a petitioner must show his [or her] mental impairment was

an "extraordinary circumstance" beyond his [or her] control, by demonstrating the impairment was so severe that either

(a) petitioner was unable rationally or factually to personally understand the need to timely file, or

(b) petitioner's mental state rendered him [or her] unable personally to prepare a habeas petition and effectuate its filing.

(2) *Second*, the petitioner must show diligence in pursuing the claims to the extent he [or she] could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

Id. at 1099-1100 (citations omitted); see also Stancle v. Clay, 692 F.3d 948, 952 (9th Cir. 2012) (illiterate prisoner did not satisfy Bills test where assistance from another inmate was available).

Here, Petitioner claims two sources of mental impairment: a learning disability and side effects from medication. Regarding his learning disability, Petitioner explains that he has "suffered from a severe learning disability his whole life." (Dkt. 37 at 3.) This disability makes it "extremely difficult to read, comprehend and understand information." (Id.)

Regarding medication side effects, Petitioner suffers from "severe hypertension" and is on "several medications" to try to control his blood pressure. (Id. at 5.) "However, many of these medications have severe side effects." (Id.) Petitioner states, "during the relevant time periods in question, Petitioner was on medication that caused him extreme fatigue, fogginess in thought and unable to concentrate and to fall asleep within 1 hour of taking it." (Id.) He would sleep for several hours then need to take his next prescribed dose soon after waking. (Id.) Petitioner complained to his doctor, but "it took months to get switched to other medications many with similar side effects." (Id.) Petitioner contends that this

13

"severely interfered with Petitioner's ability to prepare his writ petition(s)." (Id.) Petitioner says that he requested his medical records, but he did not receive them in time to attach to his opposition. (Id.) Petitioner did not identify the names of any of his medications, when he took them, or when they changed.[5]

Neither Petitioner's learning disability nor the side effects of his blood pressure medications prevented Petitioner from filing his federal petition on time. After Petitioner's trial but before sentencing, in May 2012, Petitioner executed a Faretta waiver and began to represent himself.[6] (Dkt. 26-5 at 70; 5 CT 1066.) In executing the waiver form, Petitioner represented that he could read and write, that he had read and understood the three-page form, and that the highest level of education he had reached was eleventh grade, not middle school. (Id.) Thereafter, Petitioner filed a motion for a new trial and a motion for transcripts. (Dkt. 26-5 at 76, 97; 5 CT 1072, 1093.) In January 2013, he filed lengthy written objections to various trial proceedings. (Id. at 173; 5 CT 1169.) In February 2013, he filed an "information brief" explaining the post-trial investigations he undertook to support his motion for a new trial. (Id. at 185; 5 CT 1181.) In April 2013, he filed a notice of appeal. (Id. at 199; 5 CT 1210.)

Petitioner was represented by an attorney on direct appeal. (LD 5, 8.) When his appeal concluded, he understood that he could pursue habeas relief, and in

---

[5] In his Objections, Petitioner attaches medical records from 2015. (Objections at 33-64.) None of the records mention any side effects from Petitioner's medication; in fact, a record from May 4, 2015, states, "[Petitioner] doing well, no problem . . . He denied any dizziness or syncope or palpitation." (Id. at 64.) Petitioner also claims that he was admitted "3 times to an outside hospital with hepatoma" which made his legs swell and caused him pain while walking, and attaches related records. (Id. at 3.) Despite these ailments and hospital visits, Petitioner was able to pursue a number of activities described herein that indicate that he should have understood the need and been able to file a timely federal petition before March 28, 2016.

[6] Faretta v. California, 422 U.S. 806 (1975).

14

March 2015, he attempted to retain a lawyer to do that. (Dkt. 37 at 4.) Without assistance from counsel, albeit sometimes with assistance from other inmates, he later filed (1) state habeas petitions in October 2015 and July 2016, (2) a request to extend his AEDPA deadline in May 2016 (case no. 2:16-cv-03315-JLS-KES), (3) his initial Petition in June 2016, and (4) various other documents in this case in 2016 and 2017 (e.g., Dkts. 5, 6, 8, 11, 29, 31, 33, 35, 37). He was also able to obtain his GED, correspond with the California Appellate Project, and request information from the law librarian to support his claims. (Dkt. 15 at 2; Dkt. 37 at 3, 24.) Thus, whatever ill effects Petitioner's life-long learning disability or blood pressure medications may have caused him, they did not prevent him from understanding the need to file a timely federal petition or the ability to do so prior to March 28, 2016.

d.      Attorney Abandonment.

After March 15, 2015, Petitioner contacted Anthony Esquivel "seeking representation for [his] state and federal petitions." (Dkt. 37 at 19, ¶ 4.) In May 2015, Mr. Esquivel "responded that he would represent [Petitioner] or have someone in his law office" undertake the representation. (Id. at 4, 19, ¶ 4.) "Mr. Esquivel then abandoned Petitioner, never did any legal work for Petitioner, file any documents in court for Petitioner, and refused to communicate with him." (Id. at 5.) Petitioner declares that both he and his family members attempted to contact Mr. Esquivel several times, but he never responded. (Id.)

Petitioner has not provided copies of any correspondence between himself and Mr. Esquivel, a business card, the name of the law firm, or any explanation of how he received contact information for Mr. Esquivel. The California Bar's website does not list any attorney currently licensed to practice law in California named Anthony Esquivel (or Esquival).

Even assuming that Petitioner retained Mr. Esquivel to file his state and federal habeas petitions in May 2015, Petitioner knew that Mr. Esquivel was not

15

performing work on his behalf before October 15, 2015, the date when Petitioner filed a pro se petition with the California Court of Appeal.  (LD 10.)  Petitioner failed to file a subsequent pro se exhaustion petition with the California Supreme Court because he did not realize that he needed to do so, not because he expected his attorney to do so.  (Dkt. 37 at 6.)  Attorney abandonment, therefore, did not cause Petitioner to miss his AEDPA filing deadline.

                    e.      Lack of Access to Legal Files.

        Petitioner contends that in May 2015, he sent his entire legal file to Mr. Esquivel "minus some few duplicates."  (Dkt. 37 at 19, ¶ 4.)  He never saw his file again.  (Id., ¶ 5.)

        Nevertheless, Petitioner managed to file a state habeas petition in October 2015 without his full legal file.  That petition included relevant pages from the clerk's transcript (Dkt. 26-20 at 7-8) and the reporter's transcript (id. at 9).  Moreover, when asked in the form to explain any filing delay, Petitioner said, "Have no access to the discovery and trial counsel claimed to have lost this evidence."  (Dkt. 26-20 at 6.)  Petitioner said nothing about Mr. Esquivel or his purported lack of access to his legal files because he had sent them to Mr. Esquivel.

        For these reasons, the Court finds that lack of access to his legal files did not cause Petitioner to miss his AEDPA filing deadline.

## IV.

## RECOMMENDATION

        Having failed to show entitlement to any equitable tolling, Petitioner's original federal Petition filed in June 2016 was filed after his AEDPA deadline expired in March 2016.  Having found Petitioner's claims time-barred, the Court declines to consider Respondent's alternative argument that they are also unexhausted.

//

//

16

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) approving and accepting this Final Report and Recommendation; (2) dismissing the FAP with prejudice as untimely.

DATED:  February 6, 2018

_____
KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but are subject to the right of any party to timely file Objections as provided in the Federal Rules of Civil Procedure and the instructions attached to this Report. This Report and any Objections will be reviewed by the District Judge whose initials appear in the case docket number.

17